No. 24-60622

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

WILLIAM ROBERT SHEPHERD, III,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Mississippi
No. 3:23-CR-39-CWR-LGI-1

---

## BRIEF FOR APPELLANT WILLIAM ROBERT SHEPHERD, III

---

**Omodare B. Jupiter** (MB #102054)
Federal Public Defender

**Michael L. Scott** (MB #101320)
Senior Litigator
Office of the Federal Public Defender
Northern and Southern Districts of Mississippi
200 South Lamar Street, Suite 200-N
Jackson, MS 39201
Telephone:  (601) 948-4284
Facsimile:  (601) 948-5510
Email: mike_scott@fd.org

*Attorneys for Defendant-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

*United States v. Shepherd*
No. 24-60622

The undersigned certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case:

1. The Honorable Carlton W. Reeves, United States District Judge, Jackson, Mississippi;

2. William Robert Shepherd, III, Defendant-Appellant;

3. United States of America, Plaintiff-Appellee;

4. Counsel for Plaintiff-Appellee: Acting United States Attorney Patrick A. Lemon; and Assistant United States Attorneys Jennifer Case, Jessica Terrill, and Adam T. Stuart; and

5. Counsel for Defendant-Appellant: Federal Public Defender Omodare Jupiter; Senior Litigator Michael L. Scott; and Research & Writing Specialists Alexandra R. Rosenblatt and Thomas C. Turner, Jr.

This certification is made so that the judges of this Court may evaluate possible disqualification or recusal.

s/ *Michael L. Scott*
**Michael L. Scott**
Senior Litigator

i

## REQUEST FOR ORAL ARGUMENT

Oral argument is not necessary in this case absent an intervening change in the law.

# TABLE OF CONTENTS

page:

CERTIFICATE OF INTERESTED PARTIES ........................................................i

REQUEST FOR ORAL ARGUMENT .................................................................. ii

TABLE OF CONTENTS......................................................................................... iii

TABLE OF CITATIONS ........................................................................................v

STATEMENT OF JURISDICTION........................................................................1

STATEMENT OF THE ISSUE................................................................................2

STATEMENT OF THE CASE.................................................................................3

SUMMARY OF ARGUMENT ...............................................................................4

ARGUMENT ..........................................................................................................5

I. Standard of Review..............................................................................................5

II. The National Firearms Act. ...............................................................................5

III. Section 5861(d) is unconstitutional on its face and as applied to short-barreled shotguns..................................................................................................................6

    A. The Second Amendment's plain text covers the conduct that § 5861(d) regulates. ....................................................................................................7

       1. The Second Amendment protects short-barreled shotguns.......................7

       2. Section 5861(d) infringes the right to keep and bear arms. .....................10

    B. The Government cannot meet its burden to show that § 5861(d) is consistent with the Nation's historical tradition of firearm regulation. .........................13

1.  The Government must prove relevantly similar historical analogues. ...
..................................................................................13

2.  The Government has not proved historical analogues relevantly
similar to § 5861(d). .........................................................................14

3.  The Government has proved no historical analogues for registration
and taxation as applied to short-barreled shotguns. ...........................17

CONCLUSION ...................................................................................18

CERTIFICATE OF SERVICE ................................................................19

CERTIFICATE OF COMPLIANCE.......................................................20

# TABLE OF CITATIONS

Page(s)

## Cases

*Ballew v. Cont'l Airlines, Inc.*,
  668 F.3d 777 (5th Cir. 2012)..................................................................... 10

*Caetano v. Massachusetts*,
  577 U.S. 411 (2016) ................................................................................ 10

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ......................................................................... passim

*Dobbs v. Jackson Women's Health Org.*,
  597 U.S. 215 (2022) ................................................................................ 16

*Kanter v. Barr*,
  919 F.3d 437 (7th Cir. 2019)................................................................... 12

*Maryland Shall Issue, Inc. v. Moore*,
  116 F.4th 211, 244 (4th Cir. 2024) ................................................... 10, 11

*Nat'l Coal. for Men v. Selective Serv. Sys.*,
  969 F.3d 546 (5th Cir. 2020)................................................................... 10

*New York State Rifle & Pistol Ass'n v. Bruen*,
  597 U.S. 1 (2022) ............................................................................. passim

*Nunn v. State*,
  1 Ga. 243 (1846) ..................................................................................... 11

*United States v. Connelly*,
  117 F.4th 269 (5th Cir. 2024) ........................................................... 14, 17

*United States v. Diaz*,
  116 F.4th 458 (5th Cir. 2024) ................................................................. 8, 9

*United States v. Miller*,
  307 U.S. 174 (1939)............................................................................... 5, 8

*United States v. Perez-Macias*,
  335 F.3d 421 (5th Cir. 2003).................................................................... 5

*United States v. Rahimi*,
  61 F.4th 443 (5th Cir. 2023) ..................................................................... 8

*United States v. Rahimi*,
  602 U.S. 680 (2024) ........................................................................... 12, 13

## Constitutional Provisions

U.S. CONST. amend. II ........................................................................ 6

## Statutes

18 U.S.C. § 922(g)(1)........................................................ 6, 12, 14, 16
18 U.S.C. § 3742 ............................................................................... 1
26 U.S.C. § 5811 .................................................................. 5, 12, 14
26 U.S.C. § 5812................................................................ 5, 6, 12, 14
26 U.S.C. § 5841 ........................................................................... 3, 5
26 U.S.C. § 5861(d) ................................................................... passim
26 U.S.C. § 5871 ....................................................................... 3, 6, 14
28 U.S.C. § 1291 ............................................................................... 1
Federal Firearms Act, ch. 850, 52 Stat. 1250 (1938)................................5

## Rules

Fed. R. App. P. 4(b) ...................................................................... 1, 3
Fed. R. App. P. 32 ........................................................................... 20

## Other Authorities

O'Callaghan, E.B., *Laws and Ordinances of New Netherland, 1638–1674*, ......... 14
D'Cruz, James A., *Half-Cocked: The Regulatory Framework of Short-Barrel Firearms*, 40 Harv. J.L. & Pub. Pol'y 493 (2017) ......................................... 9, 17
Halbrook, Stephen P., *Congress Interprets the Second Amendment: Declarations by A Co-Equal Branch on the Individual Right to Keep and Bear Arms*, 62 Tenn. L. Rev. 597 (1995) ...................................................................... 5, 14
Spitzer, Robert J., *Gun Law History in the United States and Second Amendment Rights*, 80 Law & Contemp. Probs. 55 (2017).....................................14
1 Samuel Johnson, Dictionary of the English Language (4th ed. 1775) .................11
1 Noah Webster, American Dictionary of the English Language (1828) ..............11
Unpublished Order, *United States v. Miles*, No. 22-10932 (5th Cir. Nov. 14, 2023)...............................................10

## STATEMENT OF JURISDICTION

The United States District Court for the Southern District of Mississippi entered a judgment of conviction and sentence in this case on December 4, 2024. ROA.181–87. Mr. Shepherd filed a timely notice of appeal on December 5, 2024. ROA.188; *see* FED. R. APP. P. 4(b).

Mr. Shepherd entered a guilty plea pursuant to a plea agreement, and he reserved his right to appeal the district court's order denying his motion to dismiss the indictment. ROA.373. This Court has jurisdiction under 28 U.S.C. § 1291, which confers jurisdiction on the courts of appeals from final decisions of the district courts, and under 18 U.S.C. § 3742, as an appeal of a sentence imposed under the Sentencing Reform Act of 1984.

## STATEMENT OF THE ISSUE

Did the district court err by denying Mr. Shepherd's motion to dismiss the indictment and accepting Mr. Shepherd's guilty plea when 26 U.S.C. § 5861(d) violates the Second Amendment on its face and as applied to short-barreled shotguns?

## STATEMENT OF THE CASE

Defendant-Appellant William Robert Shepherd, III, was charged by indictment with one count of receipt or possession of an unregistered short-barreled shotgun, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. ROA.15–16.

Mr. Shepherd moved to dismiss the indictment, arguing that § 5861(d) is unconstitutional on its face and as applied to short-barreled shotguns in light of the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). ROA.89–110, 123–131. The Government opposed the motion to dismiss. ROA.111–122. The district court denied the motion after a hearing. ROA.150–161.

Mr. Shepherd pled guilty to the indictment pursuant to a plea agreement. ROA.181–87 (judgment), 285, 301 (change of plea), 368–74 (plea agreement), 375–79 (plea supplement). He reserved his right to appeal the district court's ruling denying his motion to dismiss. ROA.287 (change of plea), 373 (plea agreement).

The district court sentenced Mr. Shepherd to 24 months of imprisonment and three years of supervised release. ROA.182–83 (judgment), 357 (sentencing). Mr. Shepherd timely appealed. ROA.188–89 (notice of appeal); *see* FED. R. APP. P. 4(b).

## SUMMARY OF THE ARGUMENT

Section 5861(d) violates the Second Amendment on its face and as applied to short-barreled shotguns. It punishes the receipt and possession of certain firearms, including short-barreled shotguns, that are unregistered. By doing so, it implicates conduct protected by the plain text of the Second Amendment. Short-barreled shotguns are "arms" under the plain meaning of the Second Amendment. And registration and taxation requirements infringe the right to keep and bear those arms. Though the Supreme Court has held that the Second Amendment does not protect short-barreled shotguns, that opinion conflicts with subsequent Supreme Court precedent, and it relies on a faulty factual basis.

The Government cannot meet its burden to show that § 5861(d) fits within the Nation's historical tradition of firearm regulation. The Government has proven no Founding-era laws that regulated short-barreled firearms for a similar reason and in a similar manner as § 5861(d). For these reasons, the Court should hold that the district court erred when it denied Mr. Shepherd's motion to dismiss the indictment and accepted Mr. Shepherd's guilty plea.

# ARGUMENT

**The district court erred by denying Mr. Shepherd's motion to dismiss the indictment and accepting Mr. Shepherd's guilty plea when 26 U.S.C. § 5861(d) violates the Second Amendment on its face and as applied to the possession of short-barreled shotguns.**

## I.    Standard of review

This Court reviews constitutional challenges to a statute de novo. *United States v. Perez-Macias*, 335 F.3d 421, 425 (5th Cir. 2003).

## II.    The National Firearms Act

Congress enacted the National Firearms Act (NFA) in 1934 in response to "[v]iolence caused by the prohibition against liquor, coupled with fear or paranoia about Communism." Stephen P. Halbrook, *Congress Interprets the Second Amendment: Declarations by A Co-Equal Branch on the Individual Right to Keep and Bear Arms*, 62 Tenn. L. Rev. 597, 602 (1995). The Act required individuals to register machine guns, short-barreled firearms, and other selected firearms, and to pay a hefty stamp tax. *Id.* Those who failed to comply faced fines and up to five years' imprisonment. *See United States v. Miller*, 307 U.S. 174, 175 n.1 (1939). They did not face disarmament, though. At that time, Congress had enacted legislation disarming people convicted of crimes of violence but not those convicted of regulatory felonies. *See* Federal Firearms Act, ch. 850, 52 Stat. 1250 (1938).

The NFA's registration and taxation requirements continue today. *See* 26 U.S.C. §§ 5811, 5812, and 5841. A firearm "shall not be transferred" unless the

transferor files a written application, pays a stamp tax, and identifies the transferee. § 5812. And the NFA imposes criminal penalties for noncompliance. Section 5861(d) makes it unlawful for a person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." Those who violate § 5861(d) face fines and up to ten years' imprisonment. § 5871. They also face permanent disarmament as a result of the felony conviction. *See* 18 U.S.C. § 922(g)(1).

## III. Section 5861(d) is unconstitutional on its face and as applied to short-barreled shotguns.

The Second Amendment mandates: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. It "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

In *Bruen*, the Supreme Court set out "the standard for applying the Second Amendment," creating a two-step process to consider the constitutionality of a statute implicating the right:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 597 U.S. at 24.

The Government bears the burden to justify a regulation implicating a Second Amendment right. *Id.* at 17. To meet that burden, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19.

A.    **The Second Amendment's plain text covers the conduct that § 5861(d) regulates.**

The district court resolved Mr. Shepherd's Second Amendment challenge at *Bruen*'s step one, concluding that (1) the Second Amendment does not protect short-barreled shotguns, and (2) the NFA's registration and taxation requirements do not "infringe" the right to keep and bear arms. ROA.157–61. This Court should reject both conclusions.

1.    **The Second Amendment protects short-barreled shotguns.**

Short-barreled shotguns are "arms" under the plain text of the Second Amendment. As *Heller* explained, "[t]he 18th-century meaning" of arms was "no different from the meaning today. The 1773 edition of Samuel Johnson's dictionary defined 'arms' as '[w]eapons of offence, or armour of defence.'" *Heller*, 554 U.S. at 581 (quoting 1 Dictionary of the English Language 106 (4th ed.) (reprinted 1978)). And "Timothy Cunningham's important 1771 legal dictionary defined 'arms' as 'any thing that a man wears for his defence, or takes into his hands, or useth in wrath

to cast at or strike another.'" *Id.* (quoting 1 A New and Complete Law Dictionary). Short-barreled shotguns qualify as arms under both definitions. They are weapons of offense, and they can be used "in wrath to cast at or strike another." *See id.*

True, the Supreme Court held that the Second Amendment does not guarantee the right to keep and bear short-barreled shotguns. *Miller*, 307 U.S. at 178. But the reasoning in *Miller* is no longer valid. After *Miller*, Second Amendment jurisprudence drastically changed: it shifted from a collective right theory to an individual right theory, *Heller*, 554 U.S. at 592; and it shifted from means-end scrutiny to *Bruen*'s "new historical paradigm," *United States v. Diaz*, 116 F.4th 458, 465 (5th Cir. 2024) (citing *United States v. Rahimi*, 61 F.4th 443, 451 (5th Cir.), *cert. granted*, 143 S. Ct. 2688 (2023), *and rev'd and remanded*, 144 S. Ct. 1889 (2024)).

*Miller* was on the wrong end of both shifts. It tied the Second Amendment's protection to weapons useful for militias, *see Miller*, 307 U.S. at 178, but current Second Amendment jurisprudence recognizes that self-defense is "the central component of the right," *Heller*, 554 U.S. at 599. And *Miller* did not follow the paradigm set forth in *Bruen*: it did not justify the holding based on the plain text of the Second Amendment, it did not shift the burden to the Government to proffer relevantly similar historical analogues, and it did not identify any such analogues. *See Miller*, 307 U.S. at 178. Now, courts must perform a rigorous historical analysis of any firearm regulation that implicates the conduct that the Second Amendment's

plain text covers. *Diaz*, 116 F.4th at 466. Unless there is "precedent that conducts *Bruen*'s historical inquiry into our Nation's tradition of regulating firearm possession," this Court "must do so" itself. *See id*.

And *Miller*'s factual basis has collapsed too. *Heller* read *Miller* to mean that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Heller*, 554 U.S. at 625. But there was no basis—then or now—for finding that short-barreled firearms were not typically used for lawful purposes. Short-barreled firearms "did exist at the time of the Second Amendment's drafting and ratification." James A. D'Cruz, *Half-Cocked: The Regulatory Framework of Short-Barrel Firearms*, 40 Harv. J.L. & Pub. Pol'y 493, 508 (2017). They "have played an integral role in military operations since firearms first appeared on the battlefield." *Id.* at 503. And they "were popular for self-defense." *Id*.

Short-barreled firearms are still in common use. As of May 2021, there were 694,992 short-barreled firearms (shotguns and rifles) on the National registry. *See* https://www.atf.gov/resource-center/docs/report/2021-firearms-commerce-report/download at 15–16 (last visited March 19, 2025). Such firearms count more than three times the number of lawfully possessed stun guns that Justice Alito found sufficient to characterize a weapon as "widely owned and accepted as a legitimate

means of self-defense" in a pre-*Bruen* concurrence. *See Caetano v. Massachusetts*, 577 U.S. 411, 420 (2016) (Alito, J., concurring).

One last note: this Court has held that it "cannot ignore a decision from the Supreme Court unless directed to do so by the Court itself." *Nat'l Coal. for Men v. Selective Serv. Sys.*, 969 F.3d 546, 549 (5th Cir. 2020) (quoting *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 782 (5th Cir. 2012)). The rule applies even if a Supreme Court opinion's legal and factual basis have collapsed. *Id.*

Despite that rule, this Court may decide that *Bruen*'s paradigm shift is too significant to follow *Miller*. *See* Unpublished Order, *United States v. Miles*, No. 22-10932 (5th Cir. Nov. 14, 2023) (denying the Government's motion for summary affirmance on the basis of *Miller*, explaining that summary affirmance is inappropriate "[i]n light of the uncertainty over the scope of *Bruen*"). But if this Court determines that *Miller*—however misguided—is nonetheless binding, Mr. Shepherd presents his arguments here to preserve them for further review.

## 2.    Section 5861(d) infringes the right to keep and bear arms.

The district court concluded that the NFA's registry and taxation requirements do not infringe the right to keep and bear arms. ROA.161. That conclusion is wrong.

The plain meaning of the word "infringe" includes even minor restrictions on the right to keep and bear arms. Colonial dictionaries defined the word "infringe" to mean "to destroy; to hinder." *Maryland Shall Issue, Inc. v. Moore*, 116 F.4th 211,

244 (4th Cir. 2024), *cert. denied sub nom. Maryland Shall Issue v. Moore*, No. 24-373, 2025 WL 76446 (U.S. Jan. 13, 2025) (Richardson, J., dissenting) (quoting 1 Samuel Johnson, Dictionary of the English Language (4th ed. 1775)) (emphasis removed). In turn, they defined "hinder" to mean "to cause impediment," *id.* (citing 1 Johnson, *supra*), and "[t]o stop; to interrupt; to obstruct; to impede or prevent from moving forward by any means*," id.* (quoting 1 Noah Webster, American Dictionary of the English Language (1828)) (emphasis removed).

Consistent with this plain language, the Supreme Court has interpreted the Second Amendment to protect against small burdens on the right to keep and bear arms. In *Heller*, the Court canvassed pre-Civil War cases and cited to one opinion that "perfectly captured the way in which the operative clause of the Second Amendment furthers the purpose announced in the prefatory clause, in continuity with the English right." *Heller*, 554 U.S. at 612. That opinion held that "[t]he right of the whole people … and not militia only, to keep and bear *arms* of every description, and not *such* merely as are used by the *militia*, shall not be *infringed*, curtailed, or broken in upon, in the smallest degree." *Id.* at 612–13 (quoting *Nunn v. State*, 1 Ga. 243, 251 (1846)).

The Court's most recent Second Amendment jurisprudence affirms that the Second Amendment protects against even minor regulation of the right to keep and bear arms. In abrogating means-end scrutiny, the Supreme Court rejected a paradigm

that considered "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." *Bruen*, 597 U.S. at 18 (quoting *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019)). And in *Rahimi*, the Court explained that the *Bruen*'s second step comes into play "when the Government *regulates* arms-bearing conduct." *United States v. Rahimi*, 602 U.S. 680, 691 (2024) (emphasis added).

Both the plain text of the Second Amendment and the Supreme Court's interpretation of the right confirm that § 5861(d) implicates conduct protected by the Second Amendment. It interrupts the right to keep and bear arms by imposing application requirements, along with attendant waiting times,[1] on the possession of certain firearms. *See* § 5812. It impedes the right by requiring payment of a tax. *See* § 5811. It curtails the right by mandating self-disclosure of firearms to the Federal Government, *see infra* at 15–16, and by imposing permanent disarmament as a consequence for violations of the statute. *See* § 5861(d); 18 U.S.C. § 922(g)(1). The plain text of the Second Amendment covers the conduct that § 5861(d) regulates.

---

[1]    *See* https://www.atf.gov/resource-center/current-processing-times (last accessed March 19, 2025) identifying the current processing times for applications filed with the Bureau of Alcohol, Tobacco, Firearms and Explosives.

**B.    The Government cannot meet its burden to show that § 5861(d) is consistent with the Nation's historical tradition of firearm regulation.**

Because the plain text of the Second Amendment covers the conduct that § 5861(d) regulates, the Government bears the burden to demonstrate that the law is consistent with the Nation's historical tradition of firearm regulation. The Government cannot do so here.

**1.    The Government must prove relevantly similar historical analogues.**

In *Rahimi*, the Court explained that "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 602 U.S. at 692. To do that, a court "must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" *Id.* (quoting *Bruen*, 597 U.S. at 29).

This inquiry requires a court to train its focus on "why and how the regulation burdens the right" to keep and bear arms. *Id.*; *see Bruen*, 597 U.S. at 29. Both questions are important. A regulation may satisfy the "why" inquiry "if laws at the founding regulated firearm use to address particular problems." *Rahimi*, 602 U.S. at 692. But satisfying the "why" is not sufficient: "[e]ven when a law regulates arms-bearing for a permissible reason, … it may not be compatible with the right if it does so to an extent beyond what was done at the founding." *Id*. The challenged regulation

need not be a "dead ringer" for a historical precursor, but it "must comport with the principles underlying the Second Amendment." *Id*.

To prove that a challenged regulation is consistent with the Nation's historical tradition of firearm regulation, the Government faces a "heavy burden, as the Second Amendment 'is *not* a second-class right.'" *United States v. Connelly*, 117 F.4th 269, 274 (5th Cir. 2024) (quoting *Bruen*, 597 U.S. at 70).

### 2.     The Government has not proved historical analogues relevantly similar to § 5861(d).

The NFA regulated firearm possession in response to violence, both real and perceived. *See* Halbrook, 62 Tenn. L. Rev. at 602. It imposes registration and taxation requirements, and those who violate those requirements face fines, imprisonment, and permanent disarmament. *See* 26 U.S.C. §§ 5811, 5812, 5861(d), and 5871; 18 U.S.C. § 922(g)(1).

The Government has not proved any historical analogues that regulated firearms for a comparable reason or in a comparable manner. As far as Founding-era regulations, the Government has identified laws restricting the sale of firearms to Native Americans[2] or persons outside the colony's jurisdiction. *See* ROA.120.

---

[2] For example, the Government identified a "1652 New York law outlaw[ing] illegal trading of guns, gun powder, and lead by private individuals." ROA.120 (quoting Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 Law & Contemp. Probs. 55, 76 (2017)). But that ordinance was "not among the Records, and seems, indeed, not to have been very strictly enforced." E.B. O'Callaghan, Laws and Ordinances of New Netherland, 1638–1674, at 128 https://archive.org/details/cu31924080779402/page/128/mode/2up (last accessed

The Government does not cite historical documents explaining why colonial governments enacted these laws, so it cannot show that the laws share a common purpose with § 5861(d).

Even if the Government could show that colonial governments enacted the laws for a similar purpose, the Government cannot show that they imposed a comparable burden. First, these laws prevented the *sale* of firearms; they did not regulate the *possession* of firearms. And the regulation of firearm sales did not burden the right so much as to prevent a person from acquiring a firearm. This is especially true since the laws did not regulate the sale of firearms within the colonial jurisdiction.

Second, the laws did not mandate the disclosure of privately possessed arms.[3] The Government has pointed to no Founding-era laws that required the people to account to the Federal government for firearms kept in the home. This is no surprise given that "[i]t was understood across the political spectrum that the [Second Amendment] right helped to secure the ideal of a citizen militia, which might be necessary to oppose an oppressive military force if the constitutional order broke

---

March 19, 2025). The ordinance appears to have been directed at limiting the trade of guns to Native Americans. *See id.*

[3] The Government identified a Virginia law that required an accounting of newly arrived firearms, *see* ROA.120, but there is no evidence that it mandated an ongoing accounting of the arms after transfer.

down." *Heller*, 554 U.S. at 599. Indeed, the "threat that the new Federal Government would destroy the citizens' militia by taking away their arms was the reason that right … was codified in a written Constitution." *Id*.

Third, the Founding-era laws did not authorize permanent disarmament as a consequence of noncompliance. The Government cannot show Founding-era regulations that authorized permanent and complete disarmament as a penalty for non-compliance. Violation of § 5861(d), on the other hand, results in a felony conviction with an attendant permanent bar to the possession of firearms. *See* 18 U.S.C. § 922(g)(1).

Finally, the Government has identified modern legislation aimed at securing the safety of gunpowder and explosives. ROA.120–21. This Court should decline to afford these post-Founding analogues any weight. The Supreme Court has cautioned that historical evidence from the late nineteenth century and the twentieth century "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Bruen*, 597 U.S. at 66 n.28; *see also Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 272 (2022) (stating that "how the States regulated" when a constitutional Amendment was ratified is "the most important historical fact"). Here, the nineteenth and twentieth century regulations contradict the earlier absence of any regulations requiring the registration and taxation of a category of firearms.

16

And even if these modern regulations were relevant, they falter for the same reason as the Founding-era laws: they did not impose a comparable burden on the Second Amendment right. They did not require mandatory self-disclosure to the Federal government, and they did not authorize permanent disarmament for noncompliance.

### 3. The Government has proved no historical analogues for registration and taxation as applied to short-barreled shotguns.

Even if the Government could justify some registration and taxation requirements for some firearms, it has made no effort to justify those requirements as applied to short-barreled shotguns. At the time of the Founding, short-barreled firearms were popular choices in the military and for self-defense. D'Cruz, 40 Harv. J.L. & Pub. Pol'y at 503. Despite this extensive history, the Government has not identified any colonial law regulating them. The Government has not met its "heavy burden" to justify § 5861(d) as applied to short-barreled shotguns. *See Connelly*, 117 F.4th at 274.

## CONCLUSION

Section 5861(d) is unconstitutional on its face and as-applied to short-barreled shotguns. Mr. Shepherd asks the Court to vacate his conviction and sentence and remand for further proceedings based on any or all grounds raised within.

Respectfully submitted,

**Omodare B. Jupiter**
Federal Public Defender

s/ *Michael L. Scott*
**Michael L. Scott**
Senior Litigator
*Attorneys for Defendant-Appellant*

## CERTIFICATE OF SERVICE

I, Michael L. Scott, certify that on March 24, 2025, a copy of the Brief for Appellant was served upon counsel for the appellee by notice of electronic filing with the Fifth Circuit CM/ECF System.  A copy of this brief was also delivered via United States Mail, postage prepaid, to Defendant-Appellant William Robert Shepherd, III.

s/ *Michael L. Scott*
**Michael L. Scott**
Senior Litigator

## CERTIFICATE OF COMPLIANCE

Pursuant to FED. R. APP. P. 32(g)(1) and 5TH CIR. R. 32.3, the undersigned certifies as follows:

1.  This document complies with the type-volume limitations of FED. R. APP. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5TH CIR. R. 32.2, this document contains 3,581 words.

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and 5TH CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font size and Times New Roman type style in text and 12-point font size and Times New Roman type style in footnotes.

3.  This brief was filed electronically, in native Portable Document File (PDF) format, via the Fifth Circuit's CM/ECF system.

4.  This brief complies with the privacy-redaction requirements of 5TH CIR. R. 25.2.13 because it has been redacted of any personal data identifiers.

5.  This brief complies with the electronic-submission requirement of 5TH CIR. R. 25.2.1 because it is an exact copy of the paper document.

6.  This brief has been scanned for viruses with the most recent version of a commercial antivirus scanning program and is free of viruses.

Dated: March 24, 2025

*s/ Michael L. Scott*
**Michael L. Scott**
Senior Litigator