# 24-60622

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA

*Plaintiff-Appellee*

v.

WILLIAM ROBERT SHEPHERD, III

*Defendant-Appellant*

FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION
3:23cr39-CWR-LGI

## BRIEF OF APPELLEE

PATRICK A. LEMON
*Acting United States Attorney*
*Southern District of Mississippi*

ADAM T. STUART
Wisconsin Bar Number 1104004

JENNIFER CASE
Mississippi Bar Number 104238
*Assistant United States Attorneys*
501 E. Court Street, Suite 4.430
Jackson, Mississippi 39201
(601) 965-4480

## STATEMENT REGARDING ORAL ARGUMENT

The United States does not request oral argument. Appellant challenges the constitutionality of a federal firearms law that has been the subject of extensive litigation. The question presented can be considered fully by relying on the record and the briefs. *See* FED. R. APP. P. 34(a)(2)(C); FIFTH CIR. R. 28.2.3.

# TABLE OF CONTENTS

PAGE

STATEMENT REGARDING ORAL ARGUMENT............................................ii

STATEMENT OF JURISDICTION .......................................................1

STATEMENT OF THE ISSUE ...........................................................2

STATEMENT OF THE CASE............................................................3

I.    Course of Proceedings and Disposition Below ........................................3

      A.    Shepherd Possesses an Unregistered Short-Barreled Shotgun ...3

      B.    Shepherd Is Charged with Illegally Possessing a Gun.................5

      C.    The District Court Denies Shepherd's Motion to Dismiss,
            and Shepherd Pleads Guilty ............................................5

II.   Shepherd's Appeal .......................................................6

SUMMARY OF THE ARGUMENT....................................................6

ARGUMENT..............................................................................7

      The District Court Properly Determined that the Statute
      Requiring Registration of Firearms Is Constitutional As to
      Short-Barreled Shotguns...........................................................7

      A.    Standard of Review ...........................................................7

      B.    Legal Principles.................................................................8

            1.    The Constitution and Case Law ................................8

            2.    The National Firearms Act ................................11

C.    Discussion ............................................................................ 11

    1.    The Supreme Court's decision in *Miller* Forecloses Shepherd's Challenge ........................................... 11

    2.    The Second Amendment Does Not Protect the Right to Possess an Unregistered Short-Barreled Shotgun ........ 14

CONCLUSION ........................................................................................ 24

CERTIFICATE OF SERVICE ................................................................. 1

CERTIFICATE OF COMPLIANCE ...................................................... 2

# Table of Authorities

**Cases** PAGE

*Class v. United States*, 583 U.S. 174 (2018) ........................................................7

*District of Columbia v. Heller*, 554 U.S. 570 (2008)  .............................. passim

*Johnson v. United States*, 576 U.S. 591 (2015)  .................................................16

*N.Y. State Rifle & Pistol Ass'n v. Bruen* 597 U.S. 1 (2022).................... passim

*Robertson v. Baldwin*, 165 U.S. 275 (1897) ........................................................21

*Teixeira v. Cnty of Alameda*, 873 F.3d 670  (9th Cir. 2017) ....................21, 22

*United States v. Artez*, 290 Fed.Appx. 203 (10th Cir. 2008) ........................13

*United States v. Cox*, 906 F.3d. 1170 (10th Cir.2018) ........................14, 17, 18

*United States v. Fincher*, 538 F.3d  868 (8th Cir. 2008) ..................................13

*United States v. Fortes*, 141 F.3d 1 (1st Cir. 1998) ........................................17

*United States v. Gil*, 2024 WL 2186916 (5th Cir. 2024) ...................................7

*United States v. Howard*, 766 F.3d 414 (5th Cir. 2014)  ................................. 8

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) ..............................17

*United States v. McLaurin*, 764 F.3d 372 (4th Cir. 2014) ..............................17

*United States v. Miller*, 307 U.S. 174 (1939) .......................................... passim

*United States v. Stepp-Zafft*, 733 Fed.Appx. 327 (8th Cir. 2018) .................14

*United States v. Thompson/Center Arms Co.*, 504 U.S. 505 (1992).................21

# Table of Authorities *(cont.)*

**Statutes**                                                                                   PAGE

18 U.S.C. § 3231 ........................................................................... 2

18 U.S.C. § 3742 ........................................................................... 2

26 U.S.C. § 5845 ...................................................................... 5, 11

26 U.S.C. § 5861 ............................................. 5- 7, 11, 14, 18-20, 23

26 U.S.C. § 5871 ........................................................................... 5

28 U.S.C. § 1291 ........................................................................... 2

26 U.S.C. ch 53 ...........................................................................18

**State Cases**

*State v. Langford*, 3 Hawks 381 (N.C. 1824) ...................................20

**Rules**

FED. R. APP. P. 25.2.1 ................................................................ 2

FED. R. APP. P. 25.2.13 .............................................................. 2

FED. R. APP. P. 32 ...................................................................... 2

FED. R. APP. P. 34 ...................................................................... ii

**Table of Authorities** *(cont.)*

**Other**                                                    PAGE

Alcohol, Tobacco, Firearms, and Explosives, *Firearms Commerce
     in the United States, Annual Statistical Update 2021* ..................... 17

4 William Blackstone, *Commentaries on the Laws of England* ..................... 20

Robert J. Spitzer, *Gun Law History in the United States and Second
     Amendment Rights*, 80 LAW & CONTEMP. PROBS. 55 (2017) ......... 22

Webster's 1828 American Dictionary of the English Language ............. 18

U.S. Const. amend. II ........................................................................ 8

**24-60622**

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA

*Plaintiff-Appellee*

v.

WILLIAM ROBERT SHEPHERD, III

*Defendant-Appellant*

FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION
3:23cr39-CWR-LGI

**BRIEF OF APPELLEE**

## STATEMENT OF JURISDICTION

William Shepherd, III, appeals from a final judgment of conviction

entered by the United States District Court for the Southern District of

Mississippi on December 4, 2024, after pleading guilty before the

Honorable Carlton W. Reeves, United States District Judge. ROA.181-87

(judgment).[1]  Shepherd filed a timely notice of appeal. ROA.188.

The district court had jurisdiction over the criminal proceedings. *See*

18 U.S.C. § 3231.  This Court's jurisdiction is properly invoked. *See* 28

U.S.C. § 1291; 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUE

Whether the district court properly denied Shepherd's motion to

dismiss the indictment charging him with possessing an unregistered

short-barreled shotgun—a weapon that the Supreme Court has held is

not in common use for lawful purposes and, therefore, not protected by

the Second Amendment.

---

[1] "ROA.181-87" refers to pages 181 to 187 of the Record on Appeal; "PSR" to the presentence investigation report; and "Br." to Shepherd's brief on appeal.

2

## STATEMENT OF THE CASE

### I.    Course of Proceedings and Disposition Below

#### A.    Shepherd Possesses an Unregistered Short-Barreled Shotgun

In 2022, a National Park Service Ranger stopped Shepherd while he was driving on a federal parkway because Shepherd had lumber and other tools fastened to his truck in an unsafe manner. ROA.383 (PSR ¶¶ 13-14). After smelling marijuana coming from Shepherd's truck, the ranger asked Shepherd if he had any illegal substances or guns inside. ROA.383 (PSR ¶ 14).  Shepherd said no.  ROA.383 (PSR ¶ 14).

The ranger asked Shepherd to get out of the truck and told him that he was going to search the truck because he smelled marijuana. ROA.383 (PSR ¶ 14).  At that point, Shepherd told the ranger that he had a blunt of marijuana in the center console and a "sawed off shotgun" beside the passenger seat. ROA.383-84 (PSR ¶ 14-15).

Inside Shepherd's truck, the ranger found an unloaded, pump-action shotgun wrapped in camouflage tape. ROA.384 (PSR ¶ 16).  The

unregistered shotgun was missing most of the stock and part of the barrel.[2]

ROA.384 (PSR ¶ 16, PSR ¶ 19).  After removing some of the tape, the ranger

identified the shotgun as a Savage Stevens Model 820B 12-gauge pump

shotgun without any serial number. ROA.384 (PSR ¶ 16).

The ranger also found a glass pipe containing methamphetamine

residue and a small amount of marijuana inside the truck. ROA.384 (PSR

¶ 17).  Shepherd admitted that he smoked crystal methamphetamine earlier

in the day. ROA.384 (PSR ¶ 17).

Subsequently, Shepherd was arrested.  In an audio recorded, post-

*Miranda* interview, Shepherd admitted (1) he possessed the unregistered,

short-barrel shotgun, (2) he cut both the barrel and stock himself, (3) he had

fired the gun, and (4) he knew it was illegal to possess the unregistered,

short-barreled shotgun . ROA.384 (PSR ¶ 21).

---

[2] The barrel was approximately 15.5 inches with an overall length of 26 inches.
ROA.384 (PSR ¶ 20).

**B.      Shepherd Is Charged with Illegally Possessing a Gun**

In 2023, a federal grand jury indicted Shepherd and charged him

with possessing an unregistered short-barreled shotgun, in violation of

26 U.S.C. §§ 5845(a)(2), 5861(d) and 5871. ROA.15-16.

**C.      The District Court Denies Shepherd's Motion to Dismiss, and Shepherd Pleads Guilty**

Shepherd moved to dismiss his indictment, alleging that the

registration requirement under the National Firearms Act was

unconstitutional. ROA.89-110.  The government responded by pointing out

various rulings rejecting Shepherd's legal argument. ROA.111-22.

After the district court denied Shepherd's motion, Shepherd pled

guilty. ROA.150-61; ROA.8 (3/20/24 docket entry).  The guilty plea was

entered pursuant to a plea agreement in which Shepherd agreed to forego

appeal as to all issues except that he (1) reserved the right to challenge the

district court's order denying his motion to dismiss the indictment and

(2) retained the right to pursue ineffective-assistance-of-counsel claims.

ROA.368-73. *See* ROA.248-49 (plea agreement ¶ 8.f.).

The district court sentenced Shepherd to twenty-four months in prison. ROA.181-87 (judgment).

## II.    Shepherd's Appeal

On appeal Shepherd argues that 26 U.S.C. § 5861(d) is unconstitutional both facially and as applied to him.  His arguments are foreclosed by binding precedent from the Supreme Court.

The judgment should be affirmed.

## SUMMARY OF THE ARGUMENT

The district court properly denied Shepherd's motion to dismiss the indictment charging him with unlawfully possessing an unregistered short-barreled shotgun.  The Supreme Court's decision in *Miller* forecloses Shepherd's argument that the National Firearms Act's registration requirement violates the Second Amendment.  In *Miller*, the Supreme Court held that the Second Amendment does not protect short-barreled shotguns because they are not in common use.  Recently, the Supreme Court re-emphasized *Miller*'s holding and historical analysis in *Heller* and *Bruen*.

6

Even if this Court considers Shepherd's arguments anew, the plain text of the Second Amendment does not cover short-barreled shotguns because they are not in common use for lawful purposes and the registration requirement does not infringe the right to bear arms and is consistent with this nation's historical tradition of regulating dangerous and unusual weapons and with our tradition of regulating the sale and taxation of firearms.

## ARGUMENT

**The District Court Properly Determined that the Statute Requiring Registration of Firearms Is Constitutional as to Short-Barreled Shotguns.**

### A.    Standard of Review

Despite pleading guilty, Shepherd preserved the right to contest the constitutionality of 26 U.S.C. § 5861(d) on direct appeal by raising a Second Amendment claim in the district court in his motion to dismiss the indictment on this basis. *See Class v. United States*, 583 U.S. 174, 178-79 (2018); *United States v. Gil*, 2024 WL 2186916, at *2 (5th Cir. 2024) (unpublished per curiam) (citing *Class*, 583 U.S. at 178-79).  This Court

reviews "preserved challenges to the constitutionality of a criminal statute *de novo*." *United States v. Howard*, 766 F.3d 414, 419 (5th Cir. 2014).

### B.    Legal Principles

#### 1.    The Constitution and Case Law

The Second Amendment protects the "right of the people to keep and bear Arms." U.S. Const., amend. II.  "Like most rights," the Supreme Court has explained, "the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626.  It is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.*

In *Miller*, for example, the Supreme Court upheld the convictions of two men under the National Firearms Act for transporting unregistered short-barreled shotguns in interstate commerce. 307 U.S. at 178.  The Court concluded that short-barreled shotguns were outside the scope of the Second Amendment because they bore no "reasonable relationship to the preservation or efficiency of a well-regulated militia." *Id*.  When called for service, militiamen "were expected to appear bearing arms

8

supplied by themselves and of the kind in common use at the time." *Id.* at

179.  The Second Amendment, therefore, protected only those kinds of

arms.

Almost seventy years later, the Court in *Heller* recognized the

"important limitation on the right" from *Miller* that "the sorts of weapons

protected" by the Second Amendment "were those 'in common use at the

time.' " 554 U.S. at 627 (quoting *Miller*, 307 U.S. at 179).  In other words,

the Second Amendment "does not protect those weapons not typically

possessed by law-abiding citizens for lawful purposes, ***such as short-

barreled shotguns***." *Id.* at 625 (emphasis added).  That limitation, the

Court reasoned, was "fairly supported by the historical tradition of

prohibiting the carrying of dangerous and unusual weapons." *Id.* at 627

(internal quotation marks and citations omitted).

More recently, in *Bruen*, the Supreme Court clarified and reiterated

the framework for analyzing Second Amendment claims described in

*Heller*. 597 U.S. at 31.  In elevating the importance of the historical tradition

in Second Amendment analysis, the *Bruen* Court reinforced the limitations

9

on the kinds of protected weapons that *Heller* recognized.  It explained

that *Heller* found it "fairly supported by the historical tradition of

prohibiting the carrying of dangerous and unusual weapons" that the

Second Amendment protects only the "possession and use of weapons

that are in common use at the time." *Id.* at 21.

As Justice Alito wrote in his concurrence, *Bruen* does not "disturb[]"

*Heller*, nor does it "decide anything about the kinds of weapons that

people may possess." *Id.* at 72 (Alito, J., concurring).  Justice Kavanaugh

noted in his concurring opinion that "[p]roperly interpreted, the Second

Amendment allows a 'variety' of gun regulations," including shall-issue

handgun-licensing regimes requiring background checks and firearms-

safety courses. *Id.* at 81 (Kavanaugh, J., concurring) (quoting *Heller*, 554

U.S. at 636); *see also id.* at 38 n.9 (majority opinion) ("[N]othing in our

analysis should be interpreted to suggest the unconstitutionality" of

"shall-issue" licensing regimes, which are "designed to ensure only that

those bearing arms in the jurisdiction" are "law-abiding, responsible

citizens.").

## 2. The National Firearms Act

The National Firearms Act is a comprehensive taxing scheme that regulates the manufacture, sale, and transfer of certain especially dangerous and concealable weapons. Section 5861(d) of the Act makes it a crime to possess "a firearm which is not registered" in the National Firearms Registration and Transfer Record. 26 U.S.C. § 5861(d). The word "firearm" includes certain dangerous weapons, including "a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length." 26 U.S.C. § 5845(a)(2).

## C. Discussion

### 1. The Supreme Court's decision in *Miller* forecloses Shepherd's challenge.

*Miller*, which was undisturbed by *Bruen*, upholds the registration requirement for short-barreled shotguns and is dispositive of Shepherd's claim. In *Miller*, the Supreme Court held that short-barreled shotguns fall outside the scope of the Second Amendment because they are not "in common use" at the time and therefore bear no "reasonable relationship"

11

to the Second Amendment's goal of preservation of a well-regulated militia. *Id.* at 178–79.

*Heller* and *Bruen* reiterate *Miller*'s holding, explaining that the right to bear arms is not unlimited and extends "only to certain types of weapons." *Heller*, 554 U.S. at 623; *see also Bruen*, 597 U.S. at 21. *Heller* explicitly reads *Miller* to hold that the Second Amendment "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, ***such as short-barreled shotguns***." *Heller*, 554 U.S. at 625 (emphasis added). And, *Bruen* emphasizes that the Court in *Heller* had found it "fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons"—the historical approach endorsed by the Court in *Bruen*—that the Second Amendment protects the possession only of weapons "in common use at the time." *Bruen*, 597 U.S. at 21.

Because *Miller* remains good law, the district court properly denied Shepherd's motion to dismiss the indictment charging him with unlawfully possessing an unregistered short-barreled shotgun.

12

~~~

Shepherd argues that *Miller*'s applicability to this case is no longer

valid due to *Bruen.* Br. 8-10.  Not so.  The *Bruen* opinion endorses *Miller*'s

holding that the Second Amendment protects the possession and use of

weapons that are "in common use at the time." 597 U.S. at 21.  What's

more, it found *Miller*'s holding "fairly supported by the historical tradition

of prohibiting the carrying of dangerous and unusual weapons." *Id.  Miller*

undertook precisely the historical inquiry that *Bruen* and *Heller* require.

Shepherd's suggestion that *Bruen* overruled *Miller* is without merit.

Although this Court has not considered whether short-barreled

shotguns are protected by the Second Amendment, courts that have

considered the issue after *Heller* have held that they are not. *See, e.g.,*

*United States v. Artez*, 290 Fed.Appx. 203, 208 (10th Cir. 2008) (unpublished

decision) (noting that the Supreme Court "explicitly stated" in *Heller* that

"the Second Amendment does not protect those weapons not typically

possessed by law-abiding citizens for lawful purposes, such as short-

barreled shotguns"); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir.

13

2008) (holding possession of machine gun and unregistered short-barreled

shotgun were not reasonably related to militia service under *Heller*).

Courts considering analogous short-barreled rifles have also held

that such weapons are not protected by the Second Amendment. *See, e.g.*,

*United States v. Cox*, 906 F.3d 1170, 1185 (10th Cir. 2018); *United States v.*

*Stepp-Zafft*, 733 Fed.Appx. 327, 329 (8th Cir. 2018) (unpublished decision).

Nothing in *Bruen* invalidated those decisions relying on the reasoning

of *Miller* and *Heller*, and this Court should join its sister circuits in holding

that short-barreled shotguns are not protected by the Second Amendment.

### 2. The Second Amendment does not protect the right to possess an unregistered short-barreled shotgun.

Even if this Court considers the issue anew under the *Bruen*

framework, the Second Amendment does not protect the right to possess

an unregistered short-barreled shotgun. Moreover, even if short-barreled

shotguns are protected by the Second Amendment, the registration

requirement would nonetheless be constitutional because § 5861(d) is

consistent with the historical tradition of firearm regulation under the

second step of the *Bruen* analysis.

14

### i.    *The plain text of the Second Amendment does not cover possessing an unregistered short-barreled shotgun.*

At the first step of the *Bruen* inquiry, the plain text of the Second Amendment does not cover possession of an unregistered short-barreled shotgun for at least two reasons.[3]

~~~

*First*, short-barreled shotguns are not in common use for lawful purposes and, therefore, fall outside the scope of the Second Amendment's protection.

Sources including English history from the late 1600s, American colonial views from the founding, and post-enactment legislative history illuminated "the public understanding" of the legal text around the time it

---

[3] Under step one of the *Bruen* analysis, courts must determine whether the "plain text" of the Second Amendment "covers an individual's conduct." 597 U.S. at 24.  To determine whether it does, courts look at the "normal and ordinary meaning" of the text, as "confirmed by the historical background of the Second Amendment." *Bruen*, 597 U.S. at 20.  The *Heller* court looked to history to inform the meaning of the text because "it has always been widely understood that the Second Amendment codified a *pre-existing* right." *Id.* (emphasis in original).

15

was enacted. *Id.* Those sources indicate that the Second Amendment extends to arms "of the kind in common use." *Miller*, 307 U.S. at 179; *see also Heller*, 554 U.S. at 627; *Bruen*, 597 U.S. at 21. It "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, *such as short-barreled shotguns*." *Heller*, 554 U.S. at 625 (emphasis added). In other words, it does not protect "dangerous and unusual weapons." *Bruen*, 597 U.S. at 21 (quoting *Heller*, 554 U.S. at 627).

Under the textual analysis endorsed by *Heller* and *Bruen*, short-barreled shotguns are not protected by the Second Amendment because they are dangerous and unusual. Courts have long recognized that short-barreled shotguns are "uniquely attractive to violent criminals" because they are "[m]uch easier to conceal than long-barreled shotguns used for hunting and other lawful purposes" and "like a handgun, they can be fired with one hand—except to more lethal effect." *Johnson v. United States*, 576 U.S. 591, 640 (2015) (Alito, J., dissenting). Courts have observed that short-barreled shotguns are "inherently dangerous and generally lacking usefulness, except for violent and criminal purposes." *United States v.*

16

*McLaurin*, 764 F.3d 372, 386 (4th Cir. 2014) (quoting *United States v. Fortes*, 141 F.3d 1, 6 (1st Cir. 1998)); *see also Cox*, 906 F.3d at 1185 (noting that a long gun with a shortened barrel is both dangerous, because "its concealability fosters its use in illicit activity," and unusual, "because of its heightened capability to cause damage.") (quoting *United States v. Marzzarella*, 614 F.3d 85, 95 (3d Cir. 2010)).[4]

~~~

*Second*, even if the Second Amendment confers an individual right to possess a short-barreled shotgun, the requirement that the owner register his shotgun does not prevent a person from possessing a short-barreled shotgun and, therefore, does not "infringe" on the right protected by the Second Amendment.

---

[4] Shepherd's contention that short-barreled shotguns are in common use today is contradicted by the data. Br. 9. The total number of registered short-barreled shotguns in 2021—162,267—is a fraction of the more than 7 million pistols, revolvers, rifles, and shotguns manufactured in 2019 alone. *Firearms Commerce in the United States, Annual Statistical Update 2021*, Alcohol, Tobacco, Firearms, and Explosives, available at http://www.atf.gov/firearms/docs/report/2021-firearms-commercereport/download (last accessed April 11, 2025) (manufacturing data for 2019). Short-barreled shotguns are not in common use for lawful purposes and thus are "not eligible for Second Amendment protection." *Heller*, 554 U.S. at 622.

Section 5861(d) is not a blanket prohibition on firearms; rather, it codifies the National Firearm Act's registration regime for certain types of firearms, including short-barreled shotguns. *See Cox*, 906 F.3d at 1179 (discussing regime). Individuals can legally own and transfer short-barreled shotguns if they follow the law's registration and taxation requirements. *See generally* 26 U.S.C. ch. 53. The Second Amendment protects the right to bear arms for self-defense, but it does not protect an unfettered right to keep and carry "any weapon whatsoever in any manner whatsoever." *Heller*, 554 U.S. 626–27.

The Supreme Court made clear that laws that regulate firearms licensing and or commerce do not violate the Second Amendment. *See Bruen*, 597 U.S. at 79–80 (Kavanaugh, J., concurring) (discussing laws that require licensing or training to buy a gun). Thus, administrative burdens that stop far short of disarming law-abiding citizens do not "infringe" the right to keep and bear arms. *See* Webster's 1828 American Dictionary of the English Language (defining "infringe" as "[t]o break; to violate; to transgress" and "[t]o destroy or hinder").

18

Any minimal burden that the registration requirement imposes on the right to self-defense would be even less burdensome than other regulations that the *Bruen* Court indicated do not infringe on that right. The majority in *Bruen* explained that "nothing in [its] analysis should be interpreted to suggest the unconstitutionality" of the "shall-issue" firearm-carry licensing schemes that existed in 43 states. 597 U.S. at 38 n.9. "[T]hese shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding responsible citizens.' " *Id.* (quoting *Heller*, 554 U.S. at 635). And, Justice Kavanaugh emphasized in his concurrence (joined by the Chief Justice) that states can constitutionally require license applicants to "undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements." *Id.* at 80 (Kavanaugh, J., concurring).

If such administrative burdens on the carrying of firearms are permissible, then § 5861(d)'s requiring the registration of certain

firearms—including short-barreled shotguns—is constitutional because it does not "deny ordinary citizens their right" to self-defense. *Id.* at 38 n.9 (majority opinion).

> ## ii. The registration requirement is consistent with the historical tradition of firearm regulation.

Even if short-barreled shotguns were protected by the plain text of the Second Amendment, § 5861(d) would be constitutional because it is consistent with this nation's historical tradition of firearms regulation.

At the time of the Second Amendment's ratification, regulations of dangerous and unusual weapons were well-accepted. Under English common law, for example, "the offence of riding or going armed, with dangerous or unusual weapons, [was] a crime." 4 William Blackstone, *Commentaries on the Laws of England* 148-49.

In the United States, too, courts have long acknowledged that a man commits "an offence at common law" when he "arms himself with dangerous and unusual weapons, in such a manner as will naturally cause a terror to the people." *State v. Langford*, 3 Hawks 381, 383 (N.C. 1824). *See*

*also Bruen*, 597 U.S. at 47 (identifying Colonial-era statutes in the same vein); *Heller*, 554 U.S. at 627.

Regulations targeting the concealment of those weapons that were *not* dangerous and unusual were also common. *See Bruen*, 597 U.S. at 59 ("The historical evidence from antebellum America" shows that "States could lawfully eliminate one kind of public carry—concealed carry—so long as they left open the option to carry openly."); *Robertson v. Baldwin*, 165 U.S. 275, 281-82 (1897) (stating in *dicta* that "the right of the people to keep and bear arms (article 2) is not infringed by laws prohibiting the carrying of concealed weapons"). The National Firearms Act seeks to regulate weapons that are "likely to be used for criminal purposes," *United States v. Thompson/Center. Arms Co.*, 504 U.S. 505, 517 (1992), and is, therefore, consistent with the historical tradition of regulating—even banning— dangerous and unusual concealable weapons.

Laws that tax or regulate firearms sales also have close analogues in our nation's historical traditions. "[C]olonial governments substantially controlled the firearms trade" *Teixeira v. Cnty of Alameda*, 873 F.3d 670, 685

21

(9th Cir. 2017).  For example, "a 1652 New York law outlawed illegal trading of guns, gun powder, and lead by private individuals." Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 LAW & CONTEMP. PROBS. 55, 76 (2017).  "A 1631 Virginia law required the recording not only of all new arrivals to the colony, but also 'of arms and munitions.'" *Id.*  And, in the early 17th century, Connecticut banned residents from selling firearms outside the colony. *Teixeira*, 873 F.3d at 685. In a similar vein, Virginia provided that people were at "liberty to sell armes and ammunition to any of his majesties loyall subjects inhabiting this colony." *Id.* at 685 n.18.

Meanwhile, other colonial governments "controlled the conditions of trade" in firearms.  *Id.* at 685.  State laws regulated "the manufacture, sale, [and] transport" of guns and ammunition in the 18th and 19th centuries. Spitzer, *Gun Law History* at 74.  In 1814, for example, "Massachusetts required that all musket and pistol barrels manufactured in the state be first tested" before sale. *Id.*  Likewise, in 1820, "New Hampshire created

and appointed state gunpowder inspectors to examine every storage and

manufacturing site." *Id.*

Like these early laws, the National Firearms Act's registration

requirement for short-barreled shotguns does not prohibit possessing or

even transferring short-barreled shotguns.  Instead, the statute merely

imposes record-keeping requirements that ensure safety.  Although § 5861

is not identical to these historical statutes, the Supreme Court has

explained that the government need only identify a "historical analogue,

not a historical twin." *Bruen*, 597 U.S. at 30 (emphases omitted).  And, those

statutes evince a similar purpose:  regulating sales to ensure public safety.

*See Bruen*, 597 U.S. at 29 (explaining that "how and why" regulations

"burden a law-abiding citizen's right to armed self defense" are relevant

metrics for analogical reasoning).

The analogues discussed above—laws regulating dangerous and

unusual weapons and laws regulating commerce and taxation of firearms

—are sufficiently similar to support the National Firearms Act's

registration requirement.  Historical sources show that dangerous and

23

unusual weapons and concealed weapons could be completely banned in the colonial era because of safety concerns. The registration requirement arose out of a similar concern for safety. *Thompson/Center Arms Co.*, 504 U.S. at 517 ("It is of course clear from the face of the Act that the NFA's object was to regulate certain weapons likely to be used for criminal purposes."). And, the kinds of commercial regulations that have been common since the founding are closely analogous to the taxation and registration requirements of the National Firearms Act.

The registration requirement for short-barreled shotguns is consistent with the historical tradition of regulating dangerous and unusual weapons and sales of firearms and is, thus, constitutional.

## CONCLUSION

For the foregoing reasons, the judgment should be affirmed.

Respectfully submitted,

PATRICK A. LEMON
*Acting United States Attorney for the*
*Southern District of Mississippi*

By:    /s/ *Adam T. Stuart*
_____
ADAM T. STUART
*Assistant United States Attorney*
Wisconsin Bar Number 1104004

JENNIFER CASE
*Assistant United States Attorney*
Mississippi Bar Number 104238
501 E. Court Street, Suite 4.430
Jackson, Mississippi  39201
(601) 965-4480

Dated:  April 21, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing with the Clerk of the Court using the Electronic Case Filing system (ECF), which caused the filing to be served on counsel of record.

Dated:  April 21, 2025

/s/ *Adam T. Stuart*

ADAM T. STUART
*Assistant United States Attorney*

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 3,634 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2.  This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the typestyle requirements of FED. R. APP. 32(a)(6) because the brief has been prepared using Palatino Linotype 14-point font produced by MS Word software; the footnotes are in 12-point type.

3.  Privacy redactions required by FIFTH CIR. R. 25.2.13 have been made to this brief.

4.  The electronic submission of this brief is an exact copy of the paper document as required by FIFTH CIR. R. 25.2.1.

5.  This brief has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated:  April 21, 2025

/s/ *Adam T. Stuart*
_____
ADAM T. STUART
*Assistant United States Attorney*