No. 24-60622

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

WILLIAM ROBERT SHEPHERD, III,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Mississippi
No. 3:23-CR-39-CWR-LGI-1

---

## REPLY BRIEF FOR APPELLANT

---

**Omodare B. Jupiter** (MB #102054)
Federal Public Defender

**Michael L. Scott** (MB #101320)
Senior Litigator
Office of the Federal Public Defender
Northern and Southern Districts of Mississippi
200 South Lamar Street, Suite 200-N
Jackson, MS 39201
Telephone:  (601) 948-4284
Facsimile:  (601) 948-5510
Email: mike_scott@fd.org

*Attorneys for Defendant-Appellant*

# TABLE OF CONTENTS

page:

TABLE OF CONTENTS............................................................i

TABLE OF CITATIONS .........................................................ii

ARGUMENT ......................................................................1

I. The historical tradition of prohibiting dangerous and unusual weapons has no place in *Bruen*'s step one ...........................................................1

    A. Considering history in step one conflicts with Supreme Court precedent. .....2

    B. Considering history in step one conflicts with this Court's precedent............3

II. The Government has not met its burden to show that § 5861(d) is consistent with the Nation's historical tradition of firearm regulation.......................................5

CONCLUSION....................................................................9

CERTIFICATE OF SERVICE ...............................................10

CERTIFICATE OF COMPLIANCE......................................11

# TABLE OF CITATIONS

Page(s)

## Cases

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
  597 U.S. 1 (2022) .................................................................... passim
*Caetano v. Massachusetts,*
  577 U.S. 411 (2016) ..................................................................... 7, 8
*Cases v. United States,*
  131 F.2d 916 (1st Cir. 1942) ............................................................ 8
*D.C. v. Heller,*
  554 U.S. 570 (2008) .................................................................. passim
*Friedman v. City of Highland Park, Illinois,*
  784 F.3d 406 (7th Cir. 2015) ......................................................... 8, 9
*Johnson v. United States,*
  576 U.S. 591 (2015) ....................................................................... 7
*Kanter v. Barr,*
  919 F.3d 437 (7th Cir. 2019) ............................................................ 3
*United States v. Diaz,*
  116 F.4th 458 (5th Cir. 2024) ........................................................ 3, 4
*United States v. Rahimi,*
  602 U.S. 680 (2024) ....................................................................... 6
*United States v. Miller,*
  307 U.S. 174 (1939) ....................................................................... 1

## Statutes

18 U.S.C. § 922(g)(1) ....................................................................... 7
26 U.S.C. § 5811 ............................................................................. 7
26 U.S.C. § 5812 ............................................................................. 7
26 U.S.C. § 5861(d) ................................................................... passim

## Rules

Fed. R. App. P. 32 .......................................................................... 11

**Other Authorities**

Jamie G. McWilliam, *The Relevance of "In Common Use" After* Bruen,
2023 Harv. J.L. & Pub. Pol'y Per Curiam 37 (2023) ........................................... 2

Nelson Lund, *The Second Amendment,* Heller *, and Originalist Jurisprudence*,
56 UCLA L. Rev. 1343 (2009) ........................................................................... 5

Jesse Matthew Ruhl, Arthur L. Rizer III, Mikel J. Wier, *Gun Control: Targeting
Rationality in A Loaded Debate*,
Kan. J.L. & Pub. Pol'y, Spring 2004 ....................................................................8

# ARGUMENT

The Government relies heavily on a historical tradition of prohibiting dangerous and unusual weapons (which the Government also calls the "common-use" limitation)[1] to argue (1) that the Second Amendment's plain text does not cover short-barreled shotguns in *Bruen*'s step one, and (2) that even if it does, 26 U.S.C. § 5861(d) fits within the Nation's historical tradition of firearms regulation in *Bruen*'s step two. ECF 32 (Appellee's Br.) at 15–24. This Court should reject both arguments.

## I.  The historical tradition of prohibiting dangerous and unusual weapons has no place in *Bruen*'s step one.

In *Bruen*'s two-step process, a court must first consider whether "the Second Amendment's plain text covers an individual's conduct." *Bruen*, 597 U.S. at 24. If it does, a court must then require the Government to "justify its regulation by

---

[1] The Government acknowledges that the common-use limitation and the alleged historical tradition of regulating dangerous and unusual weapons are one and the same. The Government first explains that the Second Amendment extends only to arms "in common use." Appellee's Br. at 16 (quoting *United States v. Miller*, 307 U.S. 174, 179 (1939)). Then it reformulates that standard: "[i]n other words," the Second Amendment "does not protect 'dangerous and unusual weapons.'" Appellee's Br. at 16 (quoting *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 21 (2022)).

The Government's acknowledgement is well-founded. In *D.C. v. Heller*, 554 U.S. 570, 627 (2008) (citations omitted), the Supreme Court explained that the common-use limitation arose from the "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" And in *Bruen*, 597 U.S. at 21, the Court observed that it had drawn the "common use" limitation from a historical tradition of colonial legislatures prohibiting the carrying of dangerous and unusual weapons.

demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. This Court should consider the historical tradition of prohibiting dangerous and unusual weapons in step two of the *Bruen* framework.

> **A.  Considering history in step one conflicts with Supreme Court precedent.**

In *Bruen*, the Supreme Court commanded courts to evaluate two distinct considerations in two distinct steps: "text" in step one and "a historical tradition" in step two. *Id*. The Court explicitly allocated to the Government the burden to prove history in step two. *Id.*

The Supreme Court formulated these steps because, among other things, it "accord[ed] with how we protect other constitutional rights," like the First Amendment. *Id*. "When the Government restricts speech," it "bears the burden of proving the constitutionality of its actions." *Id*. And when that burden "includes showing whether the expressive conduct falls outside of the category of protected speech," the Government "must generally point to *historical* evidence about the reach of the First Amendment's protections." *Id.* at 24–25.

Considering history in step one would conflict with the *Bruen* framework in at least two ways. First, it would collapse the framework into one step. If a court could consider history to determine the reach of the Second Amendment's plain text in step one, there would be no need for step two. *See* Jamie G. McWilliam, *The Relevance of "In Common Use" After* Bruen, 2023 Harv. J.L. & Pub. Pol'y Per

Curiam 37, 7 (2023) (The "insertion of history into the first step of *Bruen* … renders the second step superfluous.").

Second, it would eviscerate *Bruen*'s burden-shifting scheme. A court's premature consideration of history in step one would effectively relieve the Government of its burden to prove a relevantly similar historical tradition of firearm regulation. And relieving the Government of its burden to prove history would impermissibly divorce the *Bruen* framework from the way the Court analyzes other constitutional rights. *See Bruen*, 597 U.S. at 24–25.

**B.    Considering history in step one conflicts with this Court's precedent.**

In *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024), this Court firmly rejected the argument that the plain text of the Second Amendment excludes felons from "the people" who have the right to keep and bear arms. The Court invoked then-Judge Barrett's description of two different approaches to the Second Amendment: "one approach 'uses history and tradition to identify the scope of the right, and the other uses that same body of evidence to identify the scope of the legislature's power to take it away.'" *Id*. at 466 (citing *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (Barrett, J., dissenting)). The court concluded that "*Bruen* mandates the second approach." *Id*. And it explained that while a defendant's "status as a felon is relevant[,] … it becomes so in *Bruen*'s second step of whether regulating firearm use in this way is 'consistent with the Nation's historical tradition' rather

3

than in considering the Second Amendment's initial applicability." *Id*. (quoting *Bruen*, 597 U.S. at 24).

This Court should read the word "arms" the same way. The meaning of that term—both at the Founding and today—is expansive. *See* ECF 30 (Appellant's Br.) at 7–8 (citing *Heller*, 554 U.S. at 581). History and tradition do not bear on the scope of the plain text of the term "arms" but instead on the scope of the legislature's power to regulate arms. *See Diaz*, 116 F.4th at 466. An alleged tradition of prohibiting dangerous and unusual weapons is relevant to "*Bruen*'s second step of whether regulating firearm use in this way is 'consistent with the Nation's historical tradition' rather than in considering the Second Amendment's initial applicability." *See id*.

This Court should find that the Second Amendment's plain text covers the conduct that § 5861(d) regulates,[2] so the burden shifts to the Government to justify its regulation by identifying relevantly similar historical analogues.

---

[2] In his opening brief, Mr. Shepherd details the ways that § 5861(d) "infringes" the right to keep and bear arms. *See* Appellant's Br. at 10–12. The Government's brief invokes *Bruen* dicta about shall-issue license regimes to argue that the National Firearms Act does not infringe the Second Amendment right. Appellee's Br. at 19 (citing *Bruen*, 597 U.S. at 38 n.9). The Government does not meaningfully respond to the significant and unique burdens the National Firearms Act imposes: application requirements, waiting times, a hefty tax, mandatory self-disclosure of firearms to the Federal Government, and permanent disarmament as a consequence of noncompliance. Appellant's Br. at 10–12. These burdens distinguish the National Firearms Act from state licensing schemes.

**II.    The Government has not met its burden to show that § 5861(d) is consistent with the Nation's historical tradition of firearm regulation.**

The Government offers two historical analogues to support § 5861(d): (1) a historical tradition of prohibiting dangerous and unusual weapons, including going armed or affray laws; and (2) laws regulating commerce and taxation of firearms Appellee's Br. at 20–24. In his opening brief, Mr. Shepherd demonstrated that laws regulating commerce and taxation of firearms fail to justify § 5861(d). *See* Appellant's Br. at 14–17.

This Court should also conclude that laws prohibiting dangerous and unusual weapons do not justify § 5861(d). *Contra* Appellee's Br. at 20–21. First, the Government cannot prove a historical tradition of prohibiting dangerous and unusual weapons. Though Justice Scalia referred to such a tradition in dicta in *Heller*, one scholar concluded that "Justice Scalia educe[d] exactly zero historical support for his claim." Nelson Lund, *The Second Amendment,* Heller*, and Originalist Jurisprudence*, 56 UCLA L. Rev. 1343, 1364 (2009). The scholar explained that "Justice Scalia can claim at most that there is a tradition of prohibitions on the carrying of certain arms, not on their possession." *Id*. at 1362.[3] And even that narrow tradition was limited to prohibiting the carrying of arms in a manner that terrorized

---

[3] For the same reason, the Government cannot use laws targeting concealed carry to justify § 5861(d). *Contra* Appellee's Br. at 21. These laws regulated the carrying of weapons, not their possession.

or threatened the people. *Id*. at 1363–64. This critique tracks the Supreme Court's explanation in *Bruen* that "[f]ar from banning the carrying of any class of firearms," colonial regulations limiting public carry "merely codified the existing common-law offense of bearing arms to terrorize the people." *Bruen*, 597 U.S. at 47.

And prohibitions against "going armed" do not justify § 5861(d). The Supreme Court addressed this category of laws at length in both *Bruen* and *Rahimi*, observing that they combined the elements of going about in a manner to terrorize the public with dangerous and unusual weapons. *See generally Bruen*, 597 U.S. at 46–50; *United States v. Rahimi*, 602 U.S. 680, 684, 698–99 (2024). In *Rahimi*, the Supreme Court used these laws, among others, to justify § 922(g)(8), which "prohibits an individual subject to a domestic violence restraining order from possessing a firearm." *Rahimi*, 602 U.S. at 684, 698–99. That provision, though, was a better fit. Going armed laws and § 922(g)(8) "restrict[ed] gun use to mitigate demonstrated threats of physical violence," satisfying the "why" inquiry. *Id*. at 698. And both schemes "involved judicial determinations of whether a particular defendant likely would threaten or had threatened another with a weapon," satisfying the "how" inquiry. *Id*. at 699.

Neither premise holds for § 5861(d). That provision's apparent purpose is more general: to regulate the possession of certain firearms without regard to whether a person has demonstrated a threat of violence. And its burden is different:

it imposes application requirements and delays on the possession of certain firearms, *see* 26 U.S.C. § 5812; it mandates payment of a hefty tax to possess certain firearms, *see* 26 U.S.C. § 5811; it mandates self-disclosure of certain firearms to the Federal Government, *see* § 5861(d); and it imposes permanent disarmament as a consequence for noncompliance, *see* § 5861(d); 18 U.S.C. § 922(g)(1).

Second, even if the Government could show a history and tradition of prohibiting dangerous and unusual weapons, short-barreled shotguns don't fit the bill. To prevail, the Government must show that short-barreled shotguns are "*both* dangerous *and* unusual." *Caetano v. Massachusetts*, 577 U.S. 411, 417 (2016) (Alito, J., concurring). In the district court—and on appeal—the Government failed to meet its burden.

Start with dangerous. The Government does not attempt to show that colonial governments regulated weapons that posed the same dangers as short-barreled shotguns. Instead, it cites modern caselaw suggesting that short-barreled shotguns are colloquially dangerous because they are easy to conceal and more lethal than handguns. Appellee's Br. at 16 (quoting *Johnson v. United States*, 576 U.S. 591, 640 (2015) (Alito, J., dissenting)). The Government's arguments about concealability are misplaced. They would justify regulating handguns, "the quintessential self-defense weapon." *See Heller*, 554 U.S. at 629. And there's a serious question whether short-barreled shotguns are more lethal than handguns. After all, handguns "are

responsible for the vast majority of gun violence in the United States." *Friedman v. City of Highland Park, Illinois*, 784 F.3d 406, 409 (7th Cir. 2015).

Nor has the Government proved that short-barreled shotguns are unusual. Such firearms have both military and civilian uses. Just three years after *Miller*, the First Circuit explained that *Miller* "would seem to be already outdated … because of the well know[n] fact that in the so called 'Commando Units' some sort of military use seems to have been found for almost any modern lethal weapon." *Cases v. United States*, 131 F.2d 916, 922 (1st Cir. 1942); *see also* Jesse Matthew Ruhl, Arthur L. Rizer III, Mikel J. Wier, *Gun Control: Targeting Rationality in A Loaded Debate*, Kan. J.L. & Pub. Pol'y, Spring 2004, 413 at 434 ("[S]hort-barreled shotguns are now commonly used by the military."). And as for civilian use, there are now hundreds of thousands of registered short-barreled firearms on the National registry. *See* Appellant's Br. at 9.

The Government argues that short-barreled shotguns are unusual because they account for "a fraction of" pistols, revolvers, rifles, and shotguns. Appellee's Br. at 17 n.4. But the Government makes no attempt to support its argument that a type of firearm is unusual because it is less popular than other firearms. In his concurrence in *Caetano*, 577 U.S. at 420, Justice Alito acknowledged that stun guns were "less popular than handguns," but he still concluded that they were "widely owned and accepted as a legitimate means of self-defense across the country." *Id.*

8

Finally, this Court should reject the argument that firearms are unusual based on their (un)popularity, particularly when current laws burden the possession of those firearms. As the Seventh Circuit recognized in a pre-*Bruen* opinion, that argument leads to an "absurd" result: "the reason why a particular weapon can be banned is that there is a statute banning it, so that it isn't commonly owned."[4] *Friedman*, 784 F.3d at 409. As the court emphasized, "[a] law's existence can't be the source of its own constitutional validity." *Id.*

## CONCLUSION

Section 5861(d) is unconstitutional on its face and as-applied to short-barreled shotguns. Mr. Shepherd asks the Court to vacate his conviction and sentence and remand for further proceedings based on any or all grounds raised within.

Respectfully submitted,

**Omodare B. Jupiter**
Federal Public Defender

s/ *Michael L. Scott*
**Michael L. Scott**
Senior Litigator
*Attorneys for Defendant-Appellant*

---

[4] Though the National Firearms Act does not ban short-barreled shotguns, the Act's onerous burdens on their possession likely have contributed to their relative unpopularity.

9

## CERTIFICATE OF SERVICE

I, Michael L. Scott, certify that on May 12, 2025, a copy of the Reply Brief for Appellant was served upon counsel for the appellee by notice of electronic filing with the Fifth Circuit CM/ECF System.  A copy of this brief was also delivered via United States Mail, postage prepaid, to Defendant-Appellant William Robert Shepherd, III.


s/ *Michael L. Scott*
**Michael L. Scott**
Senior Litigator

# CERTIFICATE OF COMPLIANCE

Pursuant to FED. R. APP. P. 32(g)(1) and 5TH CIR. R. 32.3, the undersigned

certifies as follows:

1. This document complies with the type-volume limitations of FED. R. APP. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5TH CIR. R. 32.2, this document contains 2,185 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and 5TH CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font size and Times New Roman type style in text and 12-point font size and Times New Roman type style in footnotes.

3. This brief was filed electronically, in native Portable Document File (PDF) format, via the Fifth Circuit's CM/ECF system.

4. This brief complies with the privacy-redaction requirements of 5TH CIR. R. 25.2.13 because it has been redacted of any personal data identifiers.

5. This brief complies with the electronic-submission requirement of 5TH CIR. R. 25.2.1 because it is an exact copy of the paper document.


Dated: May 12, 2025                    s/ *Michael L. Scott*
                                       **Michael L. Scott**
                                       Senior Litigator